UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MIGUEL ANGEL DOMINGUEZ
NAVARRETE,

Petitioner,

v.

CAUSE NO. 3:26cv790 DRL-SJF

MARKWAYNE MULLIN *et al.*,

Respondents.

OPINION AND ORDER

Immigration detainee Miguel Angel Dominguez Navarrete, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

The parties agree Mr. Dominguez Navarrete is a citizen of Mexico who entered the United States without inspection [6-2]. He says he has been here since 1999, and he has a history of traffic-related arrests and convictions in Indiana dating back to 2010. He came to the attention of immigration officials in 2026 after he was arrested in Indiana for a traffic offense. On May 13, 2026, he was taken into custody by United States Immigration and Customs Enforcement (ICE) agents in Indiana pursuant to an administrative warrant and served with a notice to appear in immigration court. He is currently detained at Miami Correctional Facility pending the outcome of his removal proceedings.

He argues that he has been unlawfully denied an opportunity for release on bond because officials view him as categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). He seeks immediate release from custody or a prompt custody redetermination hearing

before an immigration judge. In an order to show cause, the court directed the respondents to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The respondents were instructed to address why this case differs from *Aguilar* and *Singh*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and Mr. Dominguez Navarrete filed a reply.

As a preliminary matter, Mr. Dominguez Navarrete was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). He does not address that issue in

his reply. The court concludes that dismissal of the non-custodial respondents is appropriate. For clarity, the court refers to the responding party as the Warden from this point forward.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Dominguez Navarrete's detention is authorized by § 1225(b)(2). These arguments were rejected in *Aguilar* and *Singh* (and other decisions). *See supra; see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

Notably, the court of appeals recently found in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025), and thereafter reached an opinion on the merits that echoed what this court has done, though one judge concurred in the judgment and not in each part of the opinion's rationale and one judge dissented such that at times it reads as a 2-1 decision and at times, in effect, as a 1-1-1 decision, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026). The Second Circuit, Sixth Circuit, Tenth Circuit, and Eleventh Circuit reached a similar conclusion on the merits to *Aguilar* and *Singh*. The court also read the split decisions from the Fifth Circuit and Eighth Circuit. These opinions, together with others, illustrate just how complicated this patchwork of

3

statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh*, not least in light of *Castañon-Nava*.

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find no such reason. Whether Mr. Dominguez Navarrete is an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Dominguez Navarrete's arrest [6-2]. By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with our immigration laws, as they are written and as they must work within constitutional demands. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these

procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Dominguez Navarrete gives no reason to believe this process is insufficient. Absent something else, the court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

It seems Mr. Dominguez Navarrete filed a motion for a custody redetermination, else the court would leave him to that task. He was denied a custody redetermination, either on the papers or via an individualized bond hearing, because the immigration judge found that he was statutorily ineligible for bond under § 1225(b)(2) [9-1]. The good judge was following BIA guidance, *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but erroneous guidance as it turns out. Although he presses for outright release, that exceeds what would be a reasonable remedy on this record. After all, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Though the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United State*s, 163 U.S. 228, 235 (1896). Instead, the court expects the government to follow its procedures laid out in the law. It is for the Attorney General, through the individuals delegated his authority, to decide whether release is warranted

under the circumstances. *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases).

Some courts, including some in this circuit, have ordered a bond hearing. Perhaps in these other matters the petitioner explained why a custody redetermination, under procedures that already exist, would not be fair and sufficient process, or perhaps the petitioner gave some other salient reason, or perhaps the parties merely treated a customary bond hearing as shorthand for a custody redetermination. But the statute doesn't require a hearing. The regulations (insofar as the parties have provided them to the court this time) don't require it. Even the rules that govern redetermination proceedings before the immigration judge seem to afford that judge some ability to decide whether a hearing is necessary, though a custody redetermination must be given.

So, though the court agrees that detention under § 1226(a) without an opportunity to seek release under the procedures specified in the regulations—what the government has determined to be fair—would be unlawful, *see Accardi*, 347 U.S. at 265, the court leaves it to the Attorney General to follow that process, including to decide whether to release Mr. Dominguez Navarrete or to proceed differently. Only if the Attorney General, acting through designated officials, chooses to do nothing or fails to afford that process governing § 1226(a) proceedings must he be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

For these reasons, the court:

(1) DISMISSES Todd Blanche, Acting Attorney General of the United States; Markwayne Mullin, Secretary of the United States Department of Homeland Security; David Venturella, Acting Director of Immigration and Customs Enforcement; and Samuel Olson, Director of United States Immigration and Customs Enforcement Chicago Field Office, as respondents;

(2) DENIES the petition [1], except to FIND that Miguel Angel Dominguez Navarrete must be classified under 8 U.S.C. § 1226(a) and to CONDITIONALLY ORDER the Warden to release Miguel Angel Dominguez Navarrete by **July 22, 2026**, only if he remains detained without a custody redetermination before an immigration judge in accordance with 8 U.S.C. § 1226(a) and corresponding regulations by July 22, 2026, at 5:00 pm ET;

(3) DIRECTS the clerk to email forthwith today a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction; and

(4) ORDERS the Warden to file proof of compliance with this order, either to indicate that the custody redetermination process has been completed or the petitioner released, by **July 24, 2026.**

SO ORDERED.

July 14, 2026                                    *s/ Damon R. Leichty*
                                                 Judge, United States District Court

8